UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

VIRGIL GREEN,

        Plaintiff,                    Case No. 2:19-cv-81

v.                                       Honorable Paul L. Maloney

M. SMITH et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983 and state law. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Peller and Thompson.

## **Discussion**

### I.     **Factual Allegations**

Plaintiff Virgil Green is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa

County, Michigan. Plaintiff sues the following MDOC employees at URF: Custody Officer M. Smith, Classification Director Q. Peller, and Resident Unit Manager (RUM) S. Thompson.

### A. Custody Officer Smith

Plaintiff alleges that he is an Orthodox Sunni Muslim. In July 2015, he transferred to URF when another prison facility closed. Around that time, a garment factory run by Michigan State Industries (MSI) relocated to URF. Defendant Smith was the custody officer for the MSI garment factory.

On January 15, 2017, Plaintiff passed a test to work in the MSI garment factory. The following day, he temporarily transferred to a different prison facility so that he could attend a trial in a lawsuit that he brought against a MDOC corrections officer from another facility. *See Green v. Miller*, No. 2:13-cv-14247 (E.D. Mich.). Plaintiff settled that case the same day.

On January 19, 2017, Plaintiff began work in the MSI garment factory as a Machine Sewer Operator. (Compl., ECF No. 1, PageID.5.) When Plaintiff arrived for his first day of work in the garment factory, Officer Smith informed Plaintiff that he was aware of Plaintiff's temporary transfer to another prison facility for the lawsuit. He asked Plaintiff, "So you are one of those jail house lawyers huh?" (*Id.*) Plaintiff responded, "I litigate to protect my rights." Smith gave Plaintiff a "look of hatred and dislike." (*Id.*)

When Plaintiff interviewed to work for MSI, he indicated that he attended religious services on Fridays. Under a settlement that the MDOC reached in another case, the MDOC allows prisoners to leave their work assignments to attend their "primary religious services." (*Id.*) After Plaintiff began working for MSI, and other prisoners saw him leave for his religious services, some prisoners asked for permission to do the same. Smith noticed this and stated, "[S]o you guys have to always leave work to attend your service? 'cause I don't get to leave work to go to my church

2

services." (*Id.*, PageID.6.) Plaintiff replied, "Don't policy directive allow prisoners to leave work or school details to attend religious services?" (*Id.*) Smith gave Plaintiff another look conveying "hatred and dislike." (*Id.*)

Plaintiff's prayer schedule changed in February/March 2017; he began praying during his lunch break. Defendant Smith saw him and asked, "[W]hat was that you were doing during break?" (*Id.*) Plaintiff told him he was praying and Smith allegedly gave Plaintiff another look of "hatred and dislike." (*Id.*)

In late March 2017, after Plaintiff had finished his prayers at lunch break, Smith told him, "[Y]ou are not allowed to do that while at work." (*Id.*) Plaintiff replied, "[T]his is my lunch break time and I'm not being disruptive or causing any disturbance." (*Id.*, PageID.6-7.) But Smith stated, "[Y]ou can't do it." (*Id.*, PageID.7.) Plaintiff told Smith that he intended to file a grievance against Smith for "harassment of his religious beliefs." (*Id.*) Smith responded, "[O]h yeah, get in line and make sure you spell my name right." (*Id.*)

Plaintiff complained to an MSI supervisor about Smith's comments. The supervisor asked Plaintiff, "[W]hy can't you wait until you get back to your unit to do that stuff?" (*Id.*)

On March 21, Smith sounded the buzzer for count time, but Plaintiff did not show up because he did not hear the buzzer. Smith told Plaintiff that Plaintiff would be receiving a misconduct ticket for failing to show up. Plaintiff tried to explain that he did not hear the buzzer, but Smith issued a misconduct ticket anyway. Smith charged Plaintiff with a class II misconduct for being out of place and told Plaintiff that he was being "laid in" pending a misconduct hearing. (*Id.*) Smith also filled out a job termination form for Plaintiff, indicating that he would "not take back" Plaintiff in the future. (*Id.*, PageID.8.)

3

Plaintiff complained that Smith had "never given anyone else [a misconduct ticket] for being late or missing count," and Smith replied, "[T]hat's what happens when you try to challenge my authority." (*Id.*) Plaintiff believed that Smith was referring to Plaintiff's complaint to Smith's supervisor.

Plaintiff alleges that Smith did not charge other prisoners with a misconduct when they were late for count or missed it. In addition, Smith typically used the P.A. system to tell prisoners to report to count, to ensure that they do not miss the count. He did not use the P.A. system on March 21, 2017, however. Plaintiff believes that Smith did not do so in order to create a reason to terminate Plaintiff.

Plaintiff claims that Smith charged Plaintiff with a misconduct and gave Plaintiff a bad work evaluation because of Plaintiff's complaints and religious practices, in violation of the First Amendment. Plaintiff also claims that Smith violated state law by intentionally inflicting emotional distress on Plaintiff.

### B. RUM Thompson

After Smith issued the misconduct, Plaintiff prepared a written statement in his defense in preparation for the misconduct hearing. He sent that statement to Defendant Thompson. Thompson held the hearing on March 27, 2018. At the hearing, Plaintiff referred to his statement but Thompson indicated that he did not receive it and did not need it. Plaintiff attempted to give Thompson a copy of the statement, but Thompson refused to take it. Thompson told Plaintiff, "[A]ll I need to know is did you miss count, yes or no[?]" (*Id.*, PageID.11.) Thompson eventually allowed Plaintiff to read the statement aloud, and then Thompson found Plaintiff guilty of the misconduct.

Plaintiff wrote a letter to the prison warden complaining that Thompson would not allow Plaintiff to present a written statement at the misconduct hearing. About two weeks later, Thompson showed up unexpectedly when Plaintiff was being interviewed by Officer Batho about an unrelated grievance. Thompson told Plaintiff, "I have this letter you sent to the Warden claiming I never let you present [a] defense, I told her that you were allowed to read your statement and I found you guilty based on the evidence presented[.]" (*Id.*, PageID.12.) Batho expressed surprise, stating, "You wrote another kite complaining? . . . You need to pick your battles more wisely." (*Id.*)

Plaintiff claims that Thompson retaliated against Plaintiff and conspired with Batho to "continue his threat of retaliatory harassment and intimidation for making complaints about the class-II hearing procedure." (*Id.*) In addition, Plaintiff claims that Thompson violated state law by intentionally inflicting emotional distress on Plaintiff.

### C. Classification Director Peller

Plaintiff alleges that prisoners who have been fired from a job assignment due to a misconduct can become eligible for placement in the MSI job pool after a period of years or months, depending on the severity of the misconduct. The classification director at URF allegedly created a "discriminatory custom/practice" of allowing MSI supervisors to choose which prisoners they wanted to hire. (Compl., PageID.14.) Due to this custom/practice, the ratio of white to black prisoners who have been rehired to work for MSI is 3 to 1.

After Plaintiff's misconduct in 2017, he was approved for placement back in the MSI job pool on September 26, 2018. On October 2, he informed the MSI supervisor that he would like to be rehired by MSI. Meanwhile, the MSI supervisor rehired several white prisoners

5

who notified her of their presence back in the general population, but she allegedly refused to hire any black prisoners who sent her a request.

On October 2, Plaintiff sent a kite to Classification Director Peller asking for information about his placement on the MSI hiring list. He told Peller that he had prior experience working for MSI. Peller wrote back, informing him that "priority experience does not move you up. It[']s based on ERD's[1] & misconducts." (*Id.*, PageID.15.) Plaintiff sent another kite to Peller, telling her that the previous classification director had favored prisoners with experience. She responded by informing Plaintiff that he is "70th on the list." (*Id.*, PageID.16.)

Plaintiff claims that Peller conspired with MSI supervisors to "discriminate/retaliate in the custom/practice of hiring/rehiring more white prisoners than black prisoners." (*Id.*) Plaintiff asserts that Peller violated federal law by conspiring to "discriminate/retaliate" against Plaintiff by not rehiring him. Plaintiff also claims that Peller violated state law by intentionally inflicting emotional distress.

As relief for his injuries, Plaintiff seeks a declaratory judgment and compensatory and punitive damages.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

---

[1] ERD likely refers to a prisoner's "earliest release date." *See In re Salameh*, No. 318790, 2014 WL 2972418, at *1 (Mich. Ct. App. July 1, 2014) (referring to a Michigan prisoner's earliest release date as an ERD).

6

statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

### III. Claims under 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

#### A. Custody Officer Smith

The Court concludes that Plaintiff states at least a claim of retaliation by Defendant Smith under § 1983. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (setting forth the elements for such a claim).

## B. RUM Thompson

Plaintiff does not state a claim against Defendant Thompson. Plaintiff asserts that Thompson retaliated against him or conspired to do so. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X*, 175 F.3d at 394. In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

Plaintiff's claim fails because he does not allege any connection between an adverse action by Thompson and any protected conduct by Plaintiff. Plaintiff's letter to the warden about the misconduct hearing might qualify as protected conduct, but Thompson took no action against Plaintiff after, or in response to, that letter. Thompson simply told Plaintiff that he disagreed with Plaintiff's assertions in the letter. Thompson's statement of disagreement was not an adverse action; it was not "*capable* of deterring a person of ordinary firmness" from engaging in protected conduct. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

Thompson also found Plaintiff guilty of a misconduct, which could be an adverse action in some circumstances, but Plaintiff alleges no plausible connection between the guilty finding and any protected conduct. Thompson apparently made the finding before Plaintiff complained about the misconduct proceedings to the warden. Moreover, Plaintiff's allegations make clear that he was guilty of the misconduct: he did not show up for count time. Thus, the finding of guilt could not have been motivated by protected conduct.

Thompson also initially refused to accept Plaintiff's written statement of defense to the misconduct. This was not an adverse action, however, because Thompson eventually allowed Plaintiff to read his statement at the hearing. Thus, Thompson's decision could not have had any

meaningful adverse impact on Plaintiff or the outcome of the hearing. Consequently, it does not give rise to a retaliation claim.

In summary, Plaintiff has not plausibly alleged that Thompson took an adverse action against him, or conspired to do so, in response to Plaintiff's protected conduct. Therefore, Plaintiff fails to state a claim against Thompson under § 1983.

### C. Classification Director Peller

Peller allegedly discriminated and/or retaliated against Plaintiff by not rehiring him. These claims are wholly conclusory. The retaliation claim is conclusory because Plaintiff does not allege a plausible connection between any of Peller's actions and Plaintiff's protected conduct.

The discrimination claim is conclusory because Plaintiff does not allege facts indicating that he was treated differently from similarly-situated prisoners. The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'").

An "equal protection" plaintiff must be similarly situated to his comparators "in all relevant respects . . . ." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *see also Umani v. Mich. Dep't of Corr.,* 432 F. App'x 453, 460 (6th Cir. 2011) (To be a similarly-situated person, "the

comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or [the defendant's] treatment of them for it.'") (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). Plaintiff only alleges general statistics about the racial composition of rehires, and asserts that some white prisoners were hired instead of him. However, he alleges no facts about the other prisoners who were hired which would suggest that they were similarly situated to Plaintiff in all relevant respects. Peller apparently told Plaintiff that the priority for hiring was determined by "ERD's and misconducts." Plaintiff offers no facts to suggest otherwise.

Furthermore, Plaintiff does not allege any facts indicating that Defendant Peller played a role in the allegedly discriminatory conduct, i.e., the decisions about who to hire. Indeed, Plaintiff alleges that the MSI supervisors had the authority to choose which inmates to hire. Plaintiff's assertion that Peller conspired with the MSI supervisor is wholly speculative and conclusory. It is not enough to suggest that Peller was involved in the hiring decisions. Thus, if there was any discrimination in the hiring process, that discrimination is attributable to the MSI supervisor, not Peller.

For similar reasons, there is no factual support for Plaintiff's contention that Peller has enforced a discriminatory policy or custom with respect to rehiring. Accordingly, Plaintiff does not state a claim against Peller under § 1983.

IV.     **Claims under State Law**

Plaintiff claims that Defendants intentionally inflicted emotional distress on him, which is a claim that arises under state law. Plaintiff fails to state a claim under federal law against Defendants Thompson and Peller. The Court has supplemental, not original, jurisdiction over Plaintiff's state-law claims against Defendants.

Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id*. Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction over any state-law claims against Defendants Thompson and Peller. Accordingly, Plaintiff's state-law claims against them will be dismissed without prejudice.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Thompson and Peller will be dismissed. Plaintiff's federal claims against them will be dismissed under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's claims against them under state law will be dismissed under 28 U.S.C. § 1367(c). Plaintiff's claims against Defendant Smith remain in the case.

An order consistent with this opinion will be entered.

Dated: August 22, 2019 /s/ Paul L. Maloney
Paul L. Maloney
United States District Judge