UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| VIRGIL GREEN #189440, | Case No. 2:19-cv-00081 |
| Plaintiff, | Hon. Paul L. Maloney<br>U.S. District Judge |
| v. | |
| MICHAEL SMITH, | |
| Defendant._____/ | |

## REPORT AND RECOMMENDATION

### I.    Introduction

State prisoner Virgil Green filed this civil rights action pursuant to 42 U.S.C. § 1983. Green states that while he was incarcerated at Chippewa Correctional Facility (URF) in 2015, Defendants retaliated against him, in violation of the First Amendment, by issuing him a false misconduct ticket and giving him a poor work evaluation. The only remaining Defendant in the case is Corrections Officer (CO) Michael Smith.

This report and recommendation addresses Smith's motion for summary judgment. (ECF No. 15, PageID.68; ECF No. 16, PageID.70.) Smith argues that Green failed to properly exhaust his administrative remedies. Green argues that he properly exhausted his claim because he attempted to raise the issue of retaliation during his misconduct hearing, and because he filed an appeal that raised the issue of retaliation. (ECF No. 19, PageID.124.) Green supported his response with

1

supplemental evidence. (ECF No. 22-1, PageID.142; ECF No. 22-2, PageID.145; ECF No. 22-3; PageID.146.)

The undersigned concludes that there is a genuine issue of fact as to whether Green properly exhausted his First Amendment retaliation claim. Consequently, the undersigned respectfully recommends that this Court deny Smith's motion.

## I.   Additional Relevant Procedural History

On April 8, 2019, Green filed this action in federal court. (ECF No. 1, PageID.1.) On August 22, 2019, the Court issued a screening opinion and order that dismissed all of Green's claims, except for Green's First Amendment retaliation claim against Smith. (ECF No. 8, PageID.46; ECF No. 9, PageID.57.)

On August 28, 2019, the case was stayed and referred to early mediation. (ECF No. 10, PageID.58.) The case failed to settle and was removed from early mediation. (ECF No. 13, PageID.65.)

## II.   Summary of Plaintiff's Allegations

Green alleges that he is an Orthodox Sunni Muslim. In July 2015, he transferred to URF when another prison facility closed. Around that time, a garment factory run by Michigan State Industries (MSI) relocated to URF. Smith was the CO for the MSI garment factory.

On January 15, 2017, Green passed a test to work in the MSI garment factory. The following day, he temporarily transferred to a different prison facility so that he could attend a trial in a lawsuit that he brought against a MDOC CO from another facility. *See Green v. Miller*, No. 2:13-cv-14247 (E.D. Mich.). Green settled that case

the same day. On January 19, 2017, Green began work in the MSI garment factory as a Machine Sewer Operator. (ECF No. 1, PageID.5.) When Green arrived for his first day of work in the garment factory, Smith informed Green that he was aware of Green's temporary transfer to another prison facility for the lawsuit. He allegedly asked Green, "So you are one of those jail house lawyers huh?" (*Id*.) Green says he responded, "I litigate to protect my rights." According to Green, Smith gave Plaintiff a "look of hatred and dislike." (*Id*.)

When Green interviewed to work for MSI, he indicated that he attended religious services on Fridays. Under a settlement that the MDOC reached in another case, the MDOC allows prisoners to leave their work assignments to attend their "primary religious services." (*Id*.) After Green began working for MSI, and other prisoners saw him leave for his religious services, some prisoners asked for permission to do the same. Smith noticed this and stated, "[S]o you guys have to always leave work to attend your service? 'cause I don't get to leave work to go to my church services." (*Id*., PageID.6.) Green replied, "Don't policy directive allow prisoners to leave work or school details to attend religious services?" (*Id*.) Smith again allegedly gave Green another look conveying "hatred and dislike." (*Id*.)

Green's prayer schedule changed in February/March 2017; he began praying during his lunch break. Smith saw him and asked, "[W]hat was that you were doing during break?" (*Id*.) Green told him he was praying, and Smith allegedly gave Green another look of "hatred and dislike." (*Id*.)

3

In late March 2017, after Green had finished his prayers at lunch break, Smith told him, "you are not allowed to do that while at work." (*Id.*) Green replied, "this is my lunch break time and I'm not being disruptive or causing any disturbance." (*Id.*, PageID.6-7.) But Smith stated, "you can't do it." (*Id.*, PageID.7.) Green told Smith that he intended to file a grievance against Smith for "harassment of his religious beliefs." (*Id.*) Smith responded, "oh yeah, get in line and make sure you spell my name right." (*Id.*)

Green complained to an MSI supervisor about Smith's comments. The supervisor asked Plaintiff, "why can't you wait until you get back to your unit to do that stuff?" (*Id.*)

On March 21, Smith sounded the buzzer for count time, but Green did not show up because he did not hear the buzzer. Smith told Green that Green would be receiving a misconduct ticket for failing to show up. Green tried to explain that he did not hear the buzzer, but Smith issued a misconduct ticket anyway. Smith charged Green with a class II misconduct for being out of place and told Green that he was being "laid in" pending a misconduct hearing. (*Id.*) Smith also filled out a job termination form for Green, indicating that he would "not take back" Green in the future. (*Id.*, PageID.8.)

Green complained that Smith had "never given anyone else [a misconduct ticket] for being late or missing count," and Smith replied, "that's what happens when you try to challenge my authority." (*Id.*) Green believed that Smith was referring to Green's complaint to Smith's supervisor.

4

Green alleges that Smith did not charge other prisoners with a misconduct when they were late for count or missed it. In addition, Smith typically used the P.A. system to tell prisoners to report to count, to ensure that they do not miss the count. He did not use the P.A. system on March 21, 2017, however. Green believes that Smith did not do so to create a reason to terminate Green.

Green claims that Smith charged Green with a misconduct and gave Green a bad work evaluation because of Green's complaints and religious practices, in violation of the First Amendment.

### III. Summary of the Relevant Misconduct Ticket Issued to Green

On March 21, 2018, Smith issued Green a Class II misconduct ticket for being out of place. (ECF No. 16-6, PageID.116.) Specifically, Green failed to appear for a head count when he was required to.

On March 27, 2018, Residential Unit Manager (RUM) Thompson presided over Green's misconduct hearing. (ECF No. 16-6, PageID.117.) At the hearing, Smith and Green testified. Green admitted to not appearing for the head count, but he explained that he did not appear because he could not hear the buzzer calling for the count. (*Id.*) Thompson determined that Green was guilty because he found Smith's statements to be credible. The hearing report does not show that Green raised the issue of retaliation. (*Id.*) The URF Hearing Investigator signed off on the hearing report on March 28, 2019. (*Id.*)

Green requested an appeal of his guilty determination. (ECF No. 22-3, PageID.146.) The request cited a statement that Green claims he was not allowed

to read during his misconduct hearing. (*Id.*) As shown below, the statement raises the issue of retaliation. (ECF No. 22-2, PageID.145.)

```
TO: HEARINGS OFFICER
NAME: GREEN-RASHAD #189440
CHARGE: OUT OF PLACE
DATE: March 21, 2018
PLEA: NOT GUILTY


                    AFFIRMATIVE DEFENSE

     In January 2017 I began working in MSI here at UHF. Since
then I have seen on many occassions other workers be late for
count and be called over the P.A. system to report and make
count. Furthermore, other workers has been late on more than
three(3) occassions but never given a class II misconduct. I feel
that C/O Smith wrote this misconduct out of discrimination and
retaliation. On 11/2017 I signed for the new revised work rule
manual, which did not provide any notice that upon being late for
count  3  times  a  worker  would  receive  a  class  II
misconduct/termination. C/O Smith has created a discriminatory
common practice of disciplining some workers and not others. C/O
Smith common practice was to announce the worker name over the
P.A. to report to count. On this occassion he chose not to notify
me over the P.A., even if I was late a third time in the year
that I have been working in MSI. C/O Smith chose to wait 10
minutes after count to approach me about missing count. C/O Smith
stated, "give me your I.D. in case I decide to write a
misconduct". As stated before, many others have been late more
than three times, but never given a misconduct (i.e., Barnett
#138130, and others).
     Based on the above facts, the hearings officer must find
that the class II misconduct be "DISMISSED".

Dated: March 22, 2018

cc: file
```

### IV. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

6

disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

V.     **Exhaustion of Administrative Remedies**

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is

---

[1]     Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). In rare circumstances, an administrative remedy will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance [or other administrative] process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view,

8

this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 2007 U.S. Dist. LEXIS 81101 at *12.

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019. Where grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff]

9

failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[2], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011).  If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94.  Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation.  MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those

---

[2]    Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe.  While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

## VI. Analysis

Smith argues that there is no genuine issue of fact that Green failed to properly exhaust Green's claim against him. For the reasons explained below, the undersigned disagrees.

In cases like this one, where a plaintiff alleges that he or she received a false misconduct ticket in retaliation for some protected conduct, in violation the First

---

[3] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

Amendment, the plaintiff does not utilize the prison's grievance process to exhaust his or her claim. *See Siggers*, 652 F.3d at 693-94. Instead, the plaintiff must raise the issue of retaliation during his or her misconduct hearing and then appeal a guilty determination based on retaliation to properly exhaust the claim. *Id*. Because Green's only remaining claim is a First Amendment retaliation claim against Green for allegedly writing a false misconduct ticket, the undersigned applies the *Siggers* framework.

In support of Smith's argument, he directs the Court's attention to (1) Green's Step II misconduct ticket (ECF No. 16-6, PageID.116), (2) Green's misconduct hearing (ECF No. 16-6, PageID.117), (3) an affidavit from URF's Hearing Investigator Dan Durant (ECF No. 16-7, PageID.118), and (4) an amended affidavit from Durant (ECF No. 21-1, PageID.136).[4]

In support of Green's opposition to Smith's motion, Green directs the Court's attention to (1) his affidavit (ECF No. 22-1, PageID.142), (2) a written statement that he was allegedly prevented from reading at his misconduct hearing (ECF No. 22-2, PageID.145), and (3) the Class II misconduct appeal that he filed (ECF No. 22-3; PageID.146).

Green's misconduct appeal form is shown below.

---

[4] Durant's two affidavits are essentially the same. The amended affidavit, however, corrects a typographical error in the first affidavit that causes a material misunderstanding. In the first affidavit, Durant swore that "Green did file an appeal" of Green's misconduct hearing. (ECF No. 16-7, PageID.119.) In the second affidavit and what Durant intended to say was that "Green did *not* file an appeal." (ECF No. 21-1, PageID.137.) As such, the undersigned relies upon the second affidavit.



(ECF No. 22-3, PageID.146.)

The bottom half of this appeal form states that the appeal is denied. (*Id.*) It is apparent, however, that Green did, in fact, appeal, and that his appeal complains that the hearing officer did not address the concerns he stated in his written statement, which included a claim of retaliation.

Based on this record, the undersigned concludes that a genuine issue of material fact remains. Green attests that he attempted to raise the issue of retaliation during his misconduct hearing via a written statement. (*See* ECF No. 22-1, PageID.142.) The written statement includes an allegation of retaliation. (*See* ECF No. 22-2, PageID.145.) And then Green's appeal complains that this written statement was not adequately addressed. (ECF No. 22-3, PageID.146.)

13

Given this record, the undersigned concludes that a genuine issue of fact exists as to the question of whether Green exhausted his administrative remedies.

### VII. Recommendation

The undersigned respectfully recommends that this Court (1) find that there is a genuine issue of fact that Green properly exhausted his remaining claim and (2) deny Smith's motion.

Dated:   July 24, 2020                                         /s/ *Maarten Vermaat*
                                                               MAARTEN VERMAAT
                                                               U. S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).