UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

VIRGIL GREEN #189440,                        Case No.   2:19-cv-00081

      Plaintiff,                               Hon.  Hala Y. Jarbou
                                             U.S. District Judge

   v.

M. SMITH,  et al.,

      Defendants.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

This Report and Recommendation (R&R) addresses Defendant Corrections Officer (CO) Smith's motion for summary judgment.  (ECF No. 36.)  On April 8, 2019, state prisoner Virgil Green filed his verified complaint pursuant to 42 U.S.C. § 1983.  Green alleges that CO Smith retaliated against him by issuing him a false misconduct ticket and terminating him from his job assignment while he was confined at the Chippewa Correctional Facility (URF).

On August 22, 2019, the Court issued a screening opinion and order that dismissed all of Green's claims, except for his First Amendment retaliation claim against CO Smith.  (ECF No. 8, PageID.46; ECF No. 9, PageID.57.)  The undersigned has also issued an R&R that addressed Smith's motion for summary judgment based on failure to exhaust administrative remedies.  (ECF No. 24.)  The undersigned recommended denial of that motion and this Court agreed.  (ECF No. 26.)

Green worked at the Michigan State Industries (MSI) garment factory within URF.  (ECF No. 1, PageID.4.)   Green admits that, on March 21, 2018, he failed to line up for a 11:00 A.M. formal count while on his job assignment at MSI.  (*Id.*, PageID.7.)   Green alleges that CO Smith retaliated against him due to his religious activities and complaints when he issued an out-of-place misconduct ticket and terminated Green from his employment.   Green has placed evidence in the   record that raises genuine issues of material facts regarding whether he was terminated from employment and issued a misconduct ticket based upon his religious practices, threat to file a grievance, and oral complaint to CO Smith's supervisor.   Green says that CO Smith failed to call him on the public address (P.A.) system to report to count. CO Smith denies that he used the P.A. system to call prisoners who were late for count and denies that he retaliated against Green.   Green has presented contradictory evidence that could establish that other prisoners who were late for morning count were first called on the P.A. system.   Green has also presented testimony from other prisoners who attest that they neither received misconduct tickets nor were terminated from their job assignments when they were late for morning count.

It is respectfully recommended that the Court deny CO Smith's motion for summary judgment.

## II.  Factual Allegations

Green alleges that he is an Orthodox Sunni Muslim. In July 2015, he transferred to URF when another prison facility closed.   (*Id.* PageID.4.)   Around

2

that time, a garment factory run by MSI relocated to URF.   (*Id.*)   Smith was the CO assigned to the MSI garment factory.   (*Id.*)

On January 15, 2017, Green passed a test to work in the MSI garment factory. (*Id.* PageID.5.)   The following day, he temporarily transferred to a different prison facility so that he could attend a trial in a lawsuit that he brought against a Michigan Dept. of Corrections (MDOC) CO from another facility.   (*Id.*; *see Green v. Miller*, E.D. Mich. Case No. 2:13-cv-14247.)   Green settled that case the same day.   (*Id.*)

On January 19, 2017, Green began work in the MSI garment factory as a Machine Sewer Operator.   (*Id.*)   When Green arrived for his first day of work in the garment factory, Smith informed Green that he was aware of Green's temporary transfer to another prison facility for the lawsuit.   He allegedly asked Green, "so you are one of those jailhouse lawyers huh?"   (*Id.*)   Green says he responded, "I litigate to protect my rights."   According to Green, Smith gave Plaintiff a "look of hatred and dislike."   (*Id.*)

When Green interviewed to work for MSI, he indicated that he attended religious services on Fridays, which was allowed by prison policy.   After Green began working for MSI, and other prisoners saw him leave for his religious services, some prisoners asked for permission to do the same.   Green says that Smith noticed this and stated, "so you guys have to always leave work to attend your service? 'cause I don't get to leave work to go to my church services."   (*Id.*, PageID.6.)   Green replied, "don't policy directive allow prisoners to leave work or school details to attend

religious services?"   (*Id.*)   Smith again allegedly gave Green another look that conveyed "hatred and dislike."   (*Id.*)

Green says that his prayer schedule changed and he began praying during his lunch break.   Smith saw him and asked, "what was that you were doing during break?"   (*Id.*)   Green told him he was praying, and Smith allegedly gave Green another look of "hatred and dislike."   (*Id.*)

Green alleged in his complaint that in late March 2017 (Green now says that this actually occurred in March of 2018 and he made a mistake in his complaint), after Green had finished his prayers at lunch break, Smith told him, "you are not allowed to do that while at work."   (*Id.*)   Green replied, "this is my lunch break time and I'm not being disruptive or causing any disturbance."   (*Id.*, PageID.6-7.)   But Smith stated, "you can't do it."   (*Id.*, PageID.7.)   Green told Smith that he intended to file a grievance against Smith for "harassment of his religious beliefs."   (*Id.*) Smith responded, "oh yeah, get in line and make sure you spell my name right."   (*Id.*) Green says that he complained to an MSI supervisor about Smith's comments.   (*Id.*)

On March 21, 2018, Smith sounded the buzzer for count time, but Green did not show up because he did not hear the buzzer.   (*Id.*)   Smith told Green that he would receive a misconduct ticket for failing to show up.   Green tried to explain that he did not hear the buzzer, but Smith issued a misconduct ticket anyway.   Smith charged Green with a Class II misconduct for being out of place and told Green that he was being "laid in" pending a misconduct hearing.   (*Id.*)   Smith also filled out a job termination form – a CSJ-363 Prisoner Program and Work Assignment

4

Evaluation Form (CSJ-363 form) – for Green, indicating that he would "not take back" Green in the future. (*Id.*, PageID.8.)

Green complained that Smith had "never given anyone else [a misconduct ticket] for being late or missing count," and Smith replied, "that's what happens when you try to challenge my authority." (*Id.*) Green believed that Smith was referring to Green's complaint to Smith's supervisor.

Green says that Smith typically used the P.A. system to tell prisoners to report to count, to ensure that they do not miss the count. (*Id.*, PageID.8.) He did not use the P.A. system on March 21, 2018, however. Green believes that Smith did not do so to create a reason to terminate Green. Green claims that Smith charged him with a misconduct and gave him a bad work evaluation due to his complaints and religious practices, in violation of the First Amendment.

On March 21, 2018, CO Smith issued a CSJ-363 form to terminate Green from his MSI factory assignment. (ECF No. 37-8, PageID.246.) CO Smith wrote:

COMMENTS AND RECOMMENDATIONS:
Prisoner Green didn't report for formal count at 1100 hrs in the M.S.I. Garment Factory. The M.S.I. Garment Factory is where MDOC officer uniforms are manufactured and shipped form, thus making prisoner accountability particularly vital due to higher potential escape risk factors. Misconduct written.

(*Id.*)

CO Smith issued Green a misconduct ticket for being out of place. (ECF No. 37-3, PageID.205.) After a hearing on the ticket, Green was found guilty of the Misconduct. The hearing report is shown below.

5

> appear and accept the sentence.
>
> ## HEARING REPORT (Do Not Complete If Hearing Waived)
>
> **Evidence and/or prisoner statement in addition to misconduct report:**
> C/O Smith stated that at 1100 hours count was called in the M.S.I. Garment Factory.  C/O Smith stated that Prisoner Green #189440 did not report for count and that at 1110 hours C/O Smith had to physically seek and find him to verify his presence in the M.S.I. building.  C/O Smith added that at no time did Prisoner Green report for count as required.  Prisoner Green stated, "I didn't hear count.  It was hard to hear count.  I didn't report because I didn't hear count called".
>
> **Reasons for findings:**
>
> Prisoner Green is found guilty based on his and C/O Smith's statements.  This respondent finds C/O Smith to be detailed and credible in his observation that Prisoner Green did not report for count as required .

(*Id.*, PageID.206.)

## III.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty.   Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).   The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## IV.   Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.   *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).   In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.   *Id.*

After a prisoner establishes the first two elements, the prisoner must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The Sixth Circuit has also employed a burden-shifting approach with respect to the causation element:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X,* 175 F.3d at 399.

7

## V.   Analysis

### 1.   Protected Conduct

Green argues that the misconduct ticket and his termination from employment were due to his litigation activities, his religious service attendance, and because he prayed during his lunch breaks.[1]

### A.   Praying At Workstation

Green alleged in his complaint that, in March of 2017, CO Smith told him he could not pray during work hours.   (ECF No. 1, PageID.6.)   Green says that after he threatened to file a grievance and complained to CO Smith's supervisor, he was given the misconduct ticket and terminated from his position.

CO Smith says that he never saw Green pray during his lunch break at his workstation and that he told never told Green that he could not pray at his workstation.   (ECF No. 37-2, PageID.202.)   CO Smith says that Green could not have prayed at his workstation at lunchtime because he ate his lunch in the chow hall.   During the time that Green worked at the MSI facility, prisoners left the facility to eat their lunch in the chow hall. (*Id*.)   This was confirmed by Plant Manager Clark who attests:

---

[1]      Green returned to his job assignment sometime during 2019, and again lost his job after going "to the hole."   He again returned to his job assignment on September 2, 2020.   (ECF No. 37-6, PageID.224-225.)

5.     Prior to July 24, 2019, all prisoner workers at the MSI factory would leave the factory at approximately 10:00 a.m. every day to eat lunch in the chow hall, and report back to the factory by 10:45 a.m.

6.     The process for lunchtime, prior to July 24, 2019, started at 9:50 a.m., when a loud, factory quality airhorn would sound signaling that it was time for all prisoner workers to turn in their tools to the tool crib.

7.     Once all tools were collected and accounted for, prisoners were released to report directly to the chow hall.

8.     Once back in the factory at 10:45 a.m., prisoners would once again receive their tools from the tool crib and resume work.

Green states otherwise. Green alleges that he threatened to file a grievance and complained to CO Smith's supervisor after CO Smith told him not to pray at his workstation during his lunchtime break.   (ECF No. 1, PageID.6-7.)   Green's allegation is enough to create some issue of fact as to whether he was told he could not pray, whether he threatened to file a grievance and whether he complained to CO Smith's supervisor.

CO Smith points out that authority exists establishing that a prisoner does not have a right to demonstrably pray while he is at work.   *Board v. Weston*, 2:19-cv-151, 2019 WL 3955678, *8 (W.D. Mich., Aug. 22, 2019);   *Cameron v. Newcomb*, 2:19-cv-71, 2020 WL 7264968, *8 (W.D. Mich., Nov. 16, 2020) *opinion adopting R&R*, 2020 WL 7263379 (Dec. 10, 2020) (finding MDOC policy prohibiting prayer while on work assignment did not violate the constitution because prisoners may pray silently as

opposed to demonstrative prayer, pray during group services, or pray when they return to their cell).

CO Smith argues that if Green had no right to pray at his workstation, any complaint, whether by grievance or to CO Smith's supervisor, would be frivolous and fail to rise to protected conduct.   An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 299 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment.")   The key point is that the oral complaint must not be frivolous for it to rise to level of protected conduct necessary to support a retaliation claim.

Nothing in the record establishes that Green was praying demonstrably at his workstation.   The complaint alleges:

> 29. Due to the change in Plaintiff's prayer schedule (i.e., Feb/Mar 2018), he began making his noon prayer at work during his lunch break, while sitting at his work station, in which Smith once noticed and stated, "what was that you were doing during break?"
>
> 30. Plaintiff replied, "I was making my prayer", which Smith again gave a look of hatred and dislike and walked away.

(ECF No. 1, PageID.6.)

Based upon the allegations in the complaint, it was not obvious to CO Smith that Green was praying at his workstation, because CO Smith asked Green what he

was doing during his lunch break.   In the opinion of the undersigned, there exists a question of fact regarding whether Green was praying silently or demonstrably at his workstation when he was allegedly told he could not, and whether Green engaged in protected conduct by threatening to file a grievance or by complaining to CO Smith's supervisor.

### B.   Litigation and Attending Religious Services

Green also alleges that he engaged in protected conduct by filing a federal complaint in the Eastern District of Michigan[2] and attending a hearing in that case. Green also asserts that he engaged in protected conduct by leaving work on Fridays to attend religious services.   Green alleges that CO Smith made statements to him to indicate that he did not like prisoners who filed litigation and who missed work to attend religious services.   In the opinion of the undersigned, Green's allegations establish a genuine issue of material fact as to whether he engaged in prior protected conduct by filing a lawsuit and by attending weekly religious services.

### 2.   Adverse Action

Green alleges that CO Smith took adverse action against him by terminating him from his employment and by issuing him a misconduct ticket for being out of place.   Defendant does not contest whether Green's job termination or the issuance of the misconduct ticket constitutes adverse action.   Green alleges that he was "laid in" (immediately taken off the job and confined to his cell) and terminated from

---

[2]     Green says he was notified on January 16, 2017, that he was transferring to a prison near Detroit Michigan so he could attend a hearing involving his civil case. Green says that his case settled that day.   (ECF No. 1, PageID.5.)

employment because of the misconduct ticket.   Green's allegations are sufficient to establish adverse conduct.   *Maben*, 887 F.3d at 267.

### 3.  Causation

CO Smith argues that there exists a lack of causation between Green's alleged protected conduct – his Eastern District of Michigan lawsuit, his threat to file a grievance and oral complaint to CO Smith's supervisor, and his Friday religious service attendance – and the issuance of the misconduct ticket and his job assignment termination.

CO Smith argues that Green's alleged protected conduct occurred over a year before the March 21, 2018, misconduct ticket and work termination.   CO Smith argues that as a matter of law, too much time had passed between the alleged protected conduct and the date of the adverse action to support a causal connection. *See Timm v. Wright State University*, 375 F.3d 418, 423 (6th Cir. 2004) (finding no evidence of retaliation because "[e]ight months is a long period of time for an employer to wait to retaliate against an employee with a termination notice . . .").

Green asserts that CO Smith issued him the misconduct ticket because of his litigation activities, his religious practices, his threat to file a grievance, and his complaint to his supervisor.   (ECF No. 39, PageID.293.)   Green says that his religious activities, threat to file a grievance, and his complaint to his supervisor all occurred in March of 2018 and not in 2017, just before he was terminated and issued the misconduct ticket.   (*Id*.)   Green says that he made a mistake in his complaint when he typed 2017.   (*Id*.)   In the opinion of the undersigned, this raises a genuine

issue of material fact on the timing of Green's protected conduct in relation to the adverse conduct, at least involving his protected religious activities such as attending weekly religious service, the threat to file a grievance, and the oral complaint to CO Smith's supervisor.

### 4.   Termination and Misconduct Ticket

CO Smith argues that he would have taken the same action by terminating Green's job assignment and issuing the misconduct ticket even if Green had never engaged in protected conduct.   It was Green's obligation to line up for the daily 11:00 A.M. count after the horn sounded.   The 11:00 A.M. formal count occurs every day at the prison regardless of location.   Green does not argue that he was unaware that the prison required the formal count at 11:00 A.M. every day.[3]   Green admitted at his deposition that "the major count, it's 11:00 o'clock; always 11:00 o'clock."   (ECF No. 37-6, PageID.222.)   On May 21, 2018, Green was the only prisoner out of the 76 prisoners who worked that morning in the MSI factory to fail to appear and line-up for the formal count.   (EFC No. 37-5, PageID.213 (affidavit of MSI Plant Manager Clark, indicating that formal count time in the factory and throughout the entire facility is 11:00 A.M. everyday).)   Prisoner count inside the MSI factory is especially important to circumvent prisoner escape due to volume of truck traffic in and out of the factory.   (*Id*., PageID.214.)   An employee who fails to accurately report a count is subject to discipline.   (*Id*.)   If a prisoner fails to report for a count, a physical

---

[3]      Green testified during his deposition that he had been late for count on two prior occasions before March of 2018.   (ECF No. 37-6, PageID.223.)

13

search must be conducted to locate that prisoner as soon as possible.   (*Id*.)   CO Smith says that he was forced to locate Green after he failed to report for the 11:00 A.M. count.

Green was issued a CSJ-363 form to terminate his job assignment and a misconduct ticket for being out of place because he failed to line-up for count on May 21, 2018.   CO Smith attests that "it is a Class II misconduct for a prisoner to not be where he is supposed to be for formal count."   (ECF No. 37-2.)   Green admitted that this was not the first time he failed to line-up or show-up for count.   (ECF No. 37-6, PageID.223.)   CO Smith argues that Green was found guilty of the misconduct for being out of place because he failed to show up for formal count and for that reason his job assignment was terminated.[4]

As evidence that he was retaliated against, Green argues that CO Smith should have called his name over the P.A. system after Green failed to show-up for the 11:00 A.M. count.   Green says that he was a level 3C worker and that Smith would make an announcement for higher level workers over the P.A. to report when they failed to show up for count.   (ECF No. 1, PageID.9.)   CO Smith states that he did not use the MSI factory public address system to call prisoners who failed to report to count.   (ECF No. 37-2, PageID.200.)   Green has submitted affidavits from three prisoner witnesses who each attest that when a prisoner is late for count, CO

---

[4]   The Correctional Facilities Administration Michigan State Industries' Operating and Work Rule Manual provides that a prisoner can be terminated after being found guilty of a Class II misconduct at the discretion of the Plant Manager. (ECF No. 37-9, PageID.254.)   In addition, being out of place can result in discipline "beginning with counseling . . . up to and including termination."   (*Id*.)

Smith's practice was to call them over the P.A. system, and he did not issue misconduct tickets to prisoners who were late for count. (ECF No. 39-1 (affidavit of inmate Monk), ECF No. 39-2 (affidavit of Dennis Thomas), ECF No. 39-3 (affidavit of Terry Ferguson).)   In the opinion of the undersigned, Green has met his burden of showing that genuine issues of material fact on his retaliation claim against CO Smith.

### 3.  Qualified Immunity

As an alternative argument, CO Smith moves to dismiss Green's retaliation claim by asserting qualified immunity from liability.   "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"   *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).   The analysis entails a two-step inquiry.   *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).   First, the court must "determine if the facts alleged make out a violation of a constitutional right."   *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)).   Second, the court asks if the

right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd*, *supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable

16

official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).

The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, *supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson*, *supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix*, *supra*, at 309 (quoting *Anderson*, *supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*D.C. v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

In the opinion of the undersigned, where there are two plausible views of the facts and a genuine issue of material fact exists on the record, the Court is prohibited from entering summary judgment for either party.   Whether Green can ultimately establish that CO Smith retaliated against him involves a factual determination that should not be made on a motion for summary judgment.   This issue should be resolved at trial.

## VI.   Recommendation

It is respectfully recommended that the Court deny Defendant CO Smith's

motion for summary judgment.    (ECF No. 36.)


Dated:     January 14, 2022                          /s/ *Maarten Vermaat*
                                                     MAARTEN VERMAAT
                                                     U.S. MAGISTRATE JUDGE


NOTICE TO PARTIES:   Objections to this Report and Recommendation must
be served on opposing parties and filed with the Clerk of the Court within fourteen
(14) days of receipt of this Report and Recommendation.   28 U.S.C. § 636(b)(1)(C);
Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).   Failure to file timely objections
constitutes a waiver of any further right to appeal.   *United States v. Walters*, 638
F.2d 947 (6th Cir. 1981).   *See also Thomas v. Arn*, 474 U.S. 140 (1985).